IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JENNIFER BOZA-RODRIGUEZ, o/b/o H.T.B., minor child,<br><br>              Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>              Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 17-13127 (JBS)<br><br>**OPINION** |

APPEARANCES:

Alan H. Polonsky, Esq.
POLONSKY AND POLONSKY
512 S. White Horse Pike
Audubon, NJ 08106
    Attorney for Plaintiff

Naomi B. Mendelsohn, Special Assistant U.S. Attorney
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 Spring Garden Street, 6th Floor
Philadelphia, PA 19123
    Attorney for Defendant

**SIMANDLE**, District Judge:

**I.    INTRODUCTION**

      This matter comes before the Court pursuant to 42 U.S.C § 405(g) for review of the final decision of the Commissioner of the Social Security Administration (hereinafter "the Commissioner") denying the application of H.T.B., a minor child,

(hereinafter "Claimant")[1] for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 401 et seq. Claimant, who suffers from autism spectrum disorder, attention deficit disorder, and asthma,[2] was denied benefits for the period of disability from February 1, 2011, the alleged onset date of disability, to August 18, 2016, the date on which Administrative Law Judge Michael S. Hertzig (hereinafter "the ALJ") issued a written decision.

In the pending appeal, Plaintiff contends that the ALJ's decision must be reversed and remanded because his finding that Claimant's impairments were not of a level of severity that met or were functionally equivalent to the level of severity of the Listings of Impairments was not supported by substantial evidence. For the reasons stated below, the Court will affirm the ALJ's decision denying Claimant's application for Supplemental Security Income.

---

[1] This suit was brought by Plaintiff Jennifer Boza-Rodriguez, on behalf of her son, Claimant H.T.B.

[2] The ALJ's Decision additionally states that Claimant has previously been diagnosed with pervasive developmental disorder, attention deficit hyperactivity disorder, and oppositional defiant disorder, though it is unclear from more recent medical examinations whether these diagnoses are still valid, or if they have been replaced by the above diagnoses. (R. 20.)

## II. BACKGROUND

### A. Procedural History

On July 30, 2013, an application for Supplemental Security Income was filed on behalf of Claimant alleging that he was disabled as of February 1, 2011. (R. 199-204.) Claimant's application was denied by the Commissioner on December 3, 2013. (R. 95-105.) His claim was again denied upon reconsideration on May 2, 2014. (R. 106-17.) A hearing was held before ALJ Michael S. Hertzig on July 21, 2016. (R. 48-70.) The ALJ issued an opinion on August 18, 2016, denying Plaintiff benefits. (R. 16-39.) On November 28, 2017, the Appeals Counsel denied Plaintiff's request for review. (R. 1-6.) This appeal timely follows.

### B. Personal, Medical, and Educational History

Claimant was 5 years old on the alleged disability onset date. (R. 22.) He was 10 years old at the time of his hearing before the ALJ and had just completed fifth grade. (R. 22, 54.) He can speak both English and Spanish and can write in English. (R. 53-54.)

From June 28, 2012 through October 31, 2014, Claimant was periodically treated at the "CASTLE" therapy program for oppositional defiant disorder, attention deficit hyperactivity disorder, and possible autism spectrum disorder. (R. 365-368, 396-734.)

3

On August 30, 2013, Claimant was examined by Dr. Avi E. Domnitz Gebet, D.O. (R. 362-64, 758-62.) Dr. Gebet noted that at that time Claimant was being treated for attention deficit hyperactivity disorder and oppositional defiant disorder. (Id.) In Dr. Gebet's opinion, however, the appropriate diagnosis was more likely autism spectrum disorder. (Id.) Dr. Gebet reviewed Claimant's scores on the "WISC-IV" assessment;[3] Dr. Gebet noted that Claimant's lower scores in the verbal abilities section (as compared with the high scores for perceptional reasoning, working memory, and processing speed) may be attributable to Claimant's "bilingual status" rather than to his intellectual capabilities. (R. 761.) Dr. Gebet also recommended that Claimant should no longer receive Focalin, a medication which makes him "very tired." (Id.)

On January 8 and 9, 2014, Claimant underwent an evaluation by Camden City Public Schools in order to determine his eligibility for an Individualized Education Program (hereinafter "IEP"), and the resulting report was completed on January 30, 2014. (R. 243-68.) The IEP evaluation included the administration of cognitive assessments from the "Wechsler Intelligence Scales for Children – Fourth Edition (WISC-IV)" and

---

[3] The Court presumes that this is a reference to the "Wechsler Intelligence Scales for Children – Fourth Edition (WISC-IV)." It is not clear the precise date on which this test was administered to Claimant.

4

educational assessments from the "Kaufman Test of Educational Achievement, Comprehensive Form, Second Edition." (R. 248-51.) In this battery of tests, in January 2013, Claimant's scores were again quite variable. For example, his performance was "average" for his grade level in perceptional reasoning, working memory, spelling, and math concepts and applications (id. at 249-50), while it was "below average" in math composite and math computation, and "extremely low" in verbal comprehension and processing speed. (Id.) His performance was at the "**upper extreme**" in letter word recognition, on the other hand. (Id. at 249) (emphasis added). His "full scale IQ" was computed as 71, deemed "borderline," but with strong reservations. (Id.) The examiner outlined concerns that Claimant was not motivated to perform up to his ability on these diagnostic tests, avoiding the tasks by complaining of feeling sick, rushing, or claiming he does not know to most questions, refusing to read the comprehension tasks. (Id.) The evaluator thus concluded that "the results of this evaluation do not appear to reflect [Claimant's] actual achievement." (Id.) As a result of the IEP report and a conference between Claimant, Claimant's mother, and various teachers and other school district staff members, it was

determined that Claimant was eligible for placement in a special education program. (R. 243-68.)[4]

On May 6, 2015, Claimant was examined by nurse practitioner Nora J. Vizzachero, APN. (R. 385-88, 751-53.) Nurse Vizzachero noted that Claimant had autism, though she assessed that Claimant was "making progress in school and at home." (R. 387.) Nurse Vizzachero further noted that Claimant was no longer taking medication for his conditions, and that there had been an "apparent exacerbation of behavior problems." (R. 752.)

### C. State Agency Consultants

On October 29, 2013, Dr. David Bogacki, Ph.D., a State agency consultative psychologist, reviewed Claimant's medical records, met with Claimant, and assessed Claimant's condition. (R. 346-47.) Dr. Bogacki noted that Claimant

> was neatly dressed and groomed. His sensorium was clear. He was oriented to time, place, and person after about 7 minutes of not giving [Dr. Bogacki] any response. [Claimant's] affect and mood were within normal limits. His speech was logical, coherent, and goal-directed. No psychotic symptoms were noted. [Claimant's] symptoms include fidgeting in his seat. He was oppositional. He has a history of defiance toward authority, and aggressive behavior toward other students. He has behavioral problems. He has temper tantrums and is stubborn. He displayed poor attention and concentration.
>
> Cognitive screening revealed that his abstraction, judgment, and insight were

---

[4] Claimant's IEP determination was reviewed and modified in April 2015 and April 2016. (R. 269-86, 311-23.)

6

> intact. He displayed very poor effort on various aspects of the cognitive exam. He recalled 3/3 objects immediately, 1/3 after 5 minutes. He recalled 6 digits forward and 3 reverse. He could calculate serial threes. He could follow a 5 level sequential direction. He could spell his name . . . forward and reversed.

(R. 346.) At that time, Dr. Bogacki diagnosed Claimant with oppositional defiant disorder and attention deficit hyperactivity disorder and noted that "[C]laimant's prognosis is good with continued treatment." (R. 346-47.)

On November 1 and December 2, 2013, Claimant's medical records were reviewed by pediatrician Dr. Katherine Azaro, M.D. and child and adolescent psychiatrist Dr. Joan Trachtenberg, M.D., respectively. (R. 100-02.) Drs. Azaro and Trachtenberg found that Claimant's conditions did "not meet, medically equal, or functionally equal the [Listings impairments]." (R. 102.)

On April 30, 2014, pediatrician Dr. Samuel Kaye, M.D. and psychologist Dr. Joseph Wieliczko, Psy.D. further reviewed Claimant's medical records and affirmed the assessment made by Drs. Azaro and Trachtenberg, in part because Claimant did not supply any new evidence for Drs. Kaye and Wieliczko to consider. (R. 111-14.)

### III. STANDARD OF REVIEW

This Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Court's review is deferential to the Commissioner's decision, and the Court must uphold the

Commissioner's factual findings where they are supported by "substantial evidence." 42 U.S.C. § 405(g); see also Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 114 (3d Cir. 2012). Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 400 (1971); see also Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (using the same language as Richardson). Therefore, if the ALJ's findings of fact are supported by substantial evidence, those findings bind the reviewing court, whether or not it would have made the same determination. Fargnoli, 247 F.3d at 38. The Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Remand is not required where it would not affect the outcome of the case. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

**IV. DISCUSSION**

    **A. Legal Standard for Determination of Disability for a Child**

In order to establish Claimant's eligibility for Supplemental Security Income, Plaintiff must meet certain medical and financial requirements. 42 U.S.C. § 1381, et seq. Children under 18, such as Claimant,

8

shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). Additionally,

> The Commissioner's regulations require a three-step analysis to determine whether a child is disabled: (1) that the child is not working; (2) that the child had a "severe" impairment or combination of impairments; and (3) that the impairment, or combination of impairments, was of Listing-level[5] severity, meaning the impairment(s) met, medically equaled or functionally equaled the severity of an impairment in the Listings. 20 C.F.R. § 416.924(a). The regulations provide that functional equivalence to the severity of an impairment in the Listings may be determined based on domains of functioning. 20 C.F.R. § 416.926a. A medically determinable impairment or combination of impairments functionally equals a listed impairment if it "result[s] in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." Id. § 416.926a(a). A child's functional limitations are considered in terms of six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." Id. § 416.926a(b)(1). A limitation is "marked" when it "interferes seriously with your ability to independently initiate, sustain, or complete activities" and marked means "more than moderate but less than extreme." Id. § 416.926a(e)(2)(i).

---

[5] "Listing" and "Listings" in this context refers to the Listings of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1.

9

T.C. ex rel. Z.C. v. Comm'r of Soc. Sec., 497 F. App'x 158, 160–61 (3d Cir. 2012).

**B. Analysis**

ALJ Hertzig issued a detailed and comprehensive opinion addressing all relevant information in this lengthy record. (R. 16-34.) The decision carefully construed the applicable regulations and applied them to the facts that the ALJ determined, going into unusual detail and explaining his decision-making process.

At step one, the ALJ found that Claimant was a minor and was not "engaged in substantial gainful activity," thereby satisfying step one. (R. 19.) At step two, the ALJ determined that Claimant's autism spectrum disorder and attention deficit disorder were both "medically determinable" and "severe," thereby satisfying step two. (R. 19-20.)

At step three, the ALJ found that Claimant's autism spectrum disorder and attention deficit disorder do not, alone or in combination, meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20.) Finally, the ALJ determined that Claimant does not have an impairment or combination of impairments that functionally equals the severity of the listed impairments. (R. 21-33.) In reaching this final determination, the ALJ analyzed the six domains of functional equivalence for children, defined in the

relevant Social Security Administration regulations: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. (R. 27-33; see also 20 C.F.R. § 416.926a(g)-(l).)

Plaintiff asserts that the ALJ's determination that Claimant's autism spectrum disorder and attention deficit disorder do not meet or medically equal any of the Listing impairments is not supported by substantial evidence. (Pl.'s Br. [Docket Item 10], 14-22.) For the reasons explained below, the Court finds that the ALJ's determination is supported by substantial evidence. As such, the Court will affirm the ALJ's decision.

> 1. **The ALJ's determination that Claimant's conditions do not meet any of the Listings is supported by substantial evidence**

Plaintiff's primary argument in support of remanding or reversing the ALJ's decision is that the ALJ "did not mention or specifically discuss in what way the impairments did not meet or equal the requirements of § 112.05 of the Listings of Impairments." (Pl.'s Br. [Docket Item 10], 15.) Section 112.05 of the Listings of Impairments addresses "intellectual disability," and its requirements at the time of the ALJ's decision could be satisfied by meeting the elements of any one

of its six subsections (§ 112.05A-F).[6] Plaintiff specifically asserts that Claimant meets the elements of § 112.05D, which states that the required level of severity is met if a claimant exhibits "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." § 112.05D.

Plaintiff asserts that Claimant has a valid verbal IQ score within the range defined by § 112.05D and that Claimant's autism spectrum disorder qualifies as another mental impairment that imposes an additional significant limitation. (Pl.'s Br. [Docket Item 10], 16-18.)

The Commissioner responds that the ALJ is not required to mention or analyze any specific listed impairment, such as § 112.05D, as long as the ALJ's decision "considers the appropriate facts and evaluates the relevant medical evidence as it relates to the Listing." (Def.'s Br. [Docket Item 11], 11 (citing Jones v. Barnhart, 364 F.3d 501, 504–05 (3d Cir. 2004)).) The Commissioner asserts that the ALJ addressed

---

[6] The Social Security Administration has since revised the contents and structure of Section 112.05, with such revisions taking effect on January 17, 2017, approximately five (5) months after the ALJ's decision in this case. (See Revised Medical Criteria for Evaluating Mental Disorders; Proposed Rule, 75 Fed. Reg. 51335 (Aug. 19, 2010) (to be codified at 20 C.F.R. pts. 404 and 416); Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66137 (Sept. 26, 2016) (to be codified at 20 C.F.R. pts. 404 and 416). For the purposes of this appeal, the Court shall rely on the regulations at they existed at the time of the ALJ's decision.

12

Claimant's IQ exam scores throughout the ALJ's decision and the ALJ ultimately found the exam scores to be invalid. (Id. (citing R. 23, 28).) The ALJ determined that Claimant's IQ scores are not accurate representations of Claimant's intellectual abilities for the reason that the exam administrator herself noted that Claimant refused to complete certain subparts of the exams, thereby rendering the exam results incomplete. (R. 23, 28 (citing R. 251 (stating that Claimant "refused to complete the subtests" and that "the results of this evaluation do not appear to reflect [Claimant's] actual achievement")).) The exam administrator's comments are substantial evidence that supports the ALJ's determination that Claimant's exam results are invalid.

As the ALJ considered the results of Claimant's IQ exam to be invalid, Claimant could not have met the requirements of § 112.05D, which requires a valid exam score between 60 and 70. See § 112.05D. Therefore, this "illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [Claimant] did not meet the requirements for any listing," including § 112.05D. Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Therefore, the ALJ's finding that Claimant's IQ exam

was invalid is supported by substantial evidence, and this case shall not be remanded or reversed on this basis.[7]

2. **Plaintiff's other arguments**

Plaintiff also briefly raises a number of other objections to the ALJ's decision.

a. Claimant's Effort and Motivation

Plaintiff additionally asserts that the ALJ inappropriately characterized Claimant's failure to complete certain portions of the cognitive assessments that were administered to him. (Pl.'s Br. [Docket Item 10], 18-20.) Specifically, Plaintiff takes issue with the ALJ stating that Claimant "displayed very poor effort on various aspects of the cognitive examination" administered by Dr. Bogacki. (R. 22; Pl.'s Br. [Docket Item 10], 19.) However, the language used by the ALJ is nearly identical to that used by Dr. Bogacki himself to describe Claimant's examination. (Compare R. 22 (Claimant "displayed very poor effort on various aspects of the cognitive examination") with R.

---

[7] The Commissioner also asserts that the ALJ did not need to address § 112.05D, because Plaintiff's counsel did not specifically identify this Listing as a basis for Claimant's application. (Def.'s Br. [Docket Item 11], 12-13.) Plaintiff contends that mentioning the phrase "learning disability" was sufficient to inform the ALJ that Plaintiff believed that § 112.05D was a basis for Claimant's application. (Pl.'s Br. [Docket Item 10], 17-18; Pl.'s Reply [Docket Item 12], 4-5.) The Court need not address this issue at this time, as the Court has found, supra, that the ALJ's decision deemed Claimant's IQ exam scores to be invalid, a decision which is supported by substantial evidence, and that therefore Claimant cannot meet the requirements of § 112.05D.

14

346 ("He displayed very poor effort on various aspects of the cognitive exam.") Similarly, Plaintiff takes issue with the ALJ's assertion that, with respect to the domain of acquiring and using information, Claimant's "greatest area of weakness was motivation." (R. 28; Pl.'s Br. [Docket Item 10], 20.) However, again, the language used by the ALJ is nearly identical to that used by the individual who administered Claimant's examination, in this case Camden City Public Schools psychologist Terri Richardson. (<u>Compare</u> R. 28 (Claimant's "greatest area of weakness was motivation") <u>with</u> R. 251 (Claimant's "area of greatest weakness is motivation.") In both of these instances, the ALJ's conclusions are taken nearly word-for-word from the opinions of examining professionals contained within the administrative record, which more than suffices to show that the ALJ's conclusions are supported by substantial evidence. Therefore, this case shall not be remanded or reversed on this basis.

### b. <u>Improvement in Claimant's Behavior</u>

Plaintiff also asserts that the ALJ's conclusion that Claimant's behavior has improved as a result of his IEP is not supported by the record. (Pl.'s Br. [Docket Item 10], 19.) However, in reaching that conclusion, the ALJ cited to Claimant's 2015 and 2016 IEP reports and June 2016 report card. (R. 25 (citing R. 272-74, 312-14, 330-31).) The ALJ's decision

15

acknowledges that Claimant continues to have difficulty in certain behavioral areas, however it also makes note of those improvements in educational, behavioral, and social areas where Claimant's teachers have indicated that he has indeed improved. The ALJ's claims regarding Claimant's improvements under his IEP are directly drawn from Claimant's IEP reports and report card, which are contained within the administrative record of this case. (R. 272-74, 312-14, 330-31.) As such, the ALJ's conclusions are supported by substantial evidence and this case shall not be remanded or reversed on this basis.

### c. Failure to Follow Treatment

Plaintiff further asserts that the ALJ inappropriately insinuates that Claimant "willfully" failed to take his prescribed medication and that the ALJ's statement that medication, along with appropriate interventions, has yielded improved behavior is not supported by substantial evidence. (Pl.'s Br. [Docket Item 10], 20-21; see also R. 24, 28-29.) Initially, the ALJ's decision does not appear to characterize Claimant's failure to take his prescribed medication as intentional or "willful;" instead, the ALJ states simply that Claimant did not take his prescribed medications for approximately four months and that this may have impacted his behavior, a possibility which was raised by Nurse Vizzachero when she examined Claimant. (R. 25-26, 751-52.) Additionally,

16

the ALJ's decision notes that during the period when Claimant was not taking his medication as prescribed, he was described to have deteriorating behavior, and that at times when Claimant took his medication as prescribed, in conjunction with school interventions, Claimant saw improved behavior. (R. 29.) As noted, supra, Nurse Vizzachero suggested that Claimant's period of worsening behavior may have been exacerbated by Claimant's failure to take his medication. (R. 751-52.) The ALJ's decision additionally highlights that Claimant's 2015 IEP report, completed before Claimant ceased taking his medication, indicated that Claimant's behavior had improved to the point that no behavior intervention plan was needed as part of the IEP. (R. 272-74.) Generally, medication is prescribed for such conditions because it may improve the child's behavior and well-being; it is not illogical to correlate improvements in behavior to compliance with a medication protocol, as the ALJ has been led to do by the clinical observations in the record. Therefore, the ALJ's statements that Claimant's consistency in taking his medications may impact his behavioral symptoms are supported by substantial evidence and this case shall not be remanded or reversed on this basis.[8]

---

[8] Plaintiff also appears to take issue with the ALJ's discussion of the domain of interacting and relating to others. (Pl.'s Br. [Docket Item 10], 21.) However, Plaintiff only supports this contention with conclusory statements and vague references to other portions of Plaintiff's brief, without ever specifically

**V.   CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ's decision to deny Claimant benefits is supported by substantial evidence, and that the ALJ's decision should be affirmed. An accompanying Order will be entered.

| | |
|---|---|
| **November 30, 2018** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | U.S. District Judge |

---

stating the legal or factual basis for objecting to this portion of the ALJ's decision. Therefore, the Court cannot address this argument at this time and this case shall not be remanded or reversed on this basis.